**Dated: March 04, 2020**        ORDERED.

*/s/ Roberta A. Colton*
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

ANTHONY VINCENT AIELLO,

    Debtor.
_____/

ROBERT ALTMAN, as Chapter 7 Trustee,

    Plaintiff,
v.

VINCENT AIELLO,

    Defendant.
_____/

Chapter 7
Case No. 3:16-bk-00169-CJJ

Adv. Pro. No. 3:16-ap-00248-CJJ

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This adversary proceeding came before the Court upon the complaint filed by Plaintiff ROBERT ALTMAN (the "Trustee"), as Chapter 7 Trustee, which seeks to avoid a certain transfer made by Debtor ANTHONY VINCENT AIELLO ("Debtor") to Defendant VINCENT AIELLO (the "Father"). Upon a review of the submitted evidence and applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

## BACKGROUND

In January 2016, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. In February 2016, the Trustee was appointed panel trustee in this case. In November 2016, the Trustee commenced this adversary proceeding in order to avoid a money transfer made by Debtor to his Father, pursuant to actual-fraud and constructive-fraud theories of avoidance. In March 2018, the Court permitted the Trustee to file an amended complaint adding a preference-avoidance claim. (Docs. 34 & 37); (Doc. 38) (the Father's answer); (Doc. 41) (Trustee's reply to affirmative defenses). The five counts of the amended complaint are as follows: 1) transfer avoidance under an "actual fraud" theory, pursuant to 11 U.S.C. § 548(a)(1)(A); 2) transfer avoidance under a "constructive fraud" theory, pursuant to 11 U.S.C. § 548(a)(1)(B); 3) recovery of the value of any transfer successfully avoided under Counts 1 or 2, pursuant to 11 U.S.C. § 550; 4) preferential transfer avoidance, pursuant to 11 U.S.C. § 547; and 5) recovery of the value of any transfer successfully avoided under Count 4, pursuant to 11 U.S.C. § 550. (Doc. 37).

In November 2019, the Trustee and the Father filed a joint motion asking the Court to cancel trial, admit the parties' stipulated submission of evidence, and to resolve this proceeding on the evidence submitted by the parties. (Doc. 67). The Court granted the joint motion. (Doc. 68). The parties filed their agreed submission of evidence in December 2019 (Doc. 70) and their respective briefs in January 2020. (Doc. 71) (the Father's brief); (Doc. 72) (the Trustee's brief).

## FINDINGS OF FACT

The Court makes the following findings of fact based on the documentary evidence jointly submitted by the parties. (Doc. 70). The evidence central to the parties' argument is the Father's telephonic deposition transcript, which was taken on October 24, 2018. (Doc. 70 at 101). The

Father was born in 1938 and is a retired barber. The Father is an "insider" for purposes of § 101(31)(A) and § 547(b)(4)(B) of the Bankruptcy Code.

Debtor moved to Flagler Beach, Florida in January 2015. Before moving to Florida, Debtor lived in Colorado for roughly twelve to fifteen years. During his time in Colorado, Debtor lost his job as a truck driver and became divorced from his wife. In 2010, while Debtor still lived in Colorado, the Father transferred a 2004 Ford Explorer (the "Ford Explorer") to Debtor. (Doc. 70 at 116). The Father testified that he "gifted" the Ford Explorer to Debtor in order to "help him out." (Doc. 70 at 117). The Father did not pay for Debtor's car insurance or any maintenance/repair costs while Debtor resided in Colorado. (Doc. 70 at 117).

In October 2014, just before moving to Florida, Debtor was involved in a car accident in the Ford Explorer. The insurance company declared the Ford Explorer to be a total loss and paid Debtor $7,309.37 in insurance proceeds. After Debtor moved to Florida in January 2015, the Father began financially supporting Debtor. The Father paid Debtor's moving expenses, which equaled roughly $1,000. The Father paid Debtor's first and last month's rent, as well as one-month's rent for a security deposit. Including monthly rent paid to Debtor's landlord,[1] the Father gave Debtor $1,500 to $2,000 per month while Debtor lived in Florida. (Doc. 70 at 124). Photocopies of the Father's check drafts were admitted into evidence. (Doc. 70 at 79-92). The Father's support of Debtor in Florida lasted for one year. In January 2016, the same month he filed his bankruptcy petition, Debtor moved in with his Father in New York.

In April 2015, while living in Florida, Debtor received the insurance proceeds and paid a portion thereof to his Father equaling roughly $6,300 (the "Insurance Proceeds"). (Doc. 70 at

---

[1] The landlord's name was Theodore Barnhill. (Doc. 70 at 79-92).

3

119).  The Father testified that Debtor gave him this money to hold on to so that Debtor would not spend it.  (Doc. 70 at 118-19).

## CONCLUSIONS OF LAW

### A.  Count 1 – Actual fraud under 11 U.S.C. § 548(a)(1)(A).

To prevail on an actual-fraud theory in an avoidance-transfer action, the plaintiff must prove, among other things, "actual intent to hinder, delay, or defraud" a creditor—which is true under both bankruptcy law and Florida law.  Compare 11 U.S.C. § 548(a)(1)(A) (2016) with § 726.105(1)(a), Fla. Stat. (2016).  The question of actual intent is a question of fact.  Belcher v. Atl. Capital Realty, LLC, 2010 WL 11507399, at *6 (M.D. Fla. Sept. 17, 2010); In re McFarland, 2014 WL 3925279, at *2 (S.D. Ga. Aug. 8, 2014).  Here, the Trustee failed to put on evidence, direct or circumstantial, of the Debtor's state of mind at the time the subject transfer was made.  Moreover, that the Father ultimately gave all the money he received back to Debtor demonstrates that Debtor did not intend to hinder, delay, or defraud any creditors by giving the Father the Insurance Proceeds.  The Court cannot find that Debtor had actual intent to hinder, delay, or defraud a creditor when he transferred the Insurance Proceeds.  This is fatal to the Trustee's claim in Count 1.

### B.  Count 2 – Constructive fraud under 11 U.S.C. § 548(a)(1)(B).

To prevail on a claim under 11 U.S.C. § 548(a)(1)(B), the Trustee must prove by a preponderance of the evidence that:  (1) the subject transfer occurred within two years before the petition-filing date; (2) the debtor was insolvent at the time of the transfer; and (3) the debtor received less than reasonably equivalent value in exchange for the subject transfer.  11 U.S.C. § 548(a)(1)(B) (2017); see also In re McDonald, 265 B.R. 632, 636 (Bankr. M.D. Fla. 2001).

"It has long been established that whether fair consideration [or reasonably equivalent value] has been given for a transfer is largely a question of fact, as to which considerable latitude

must be allowed to the trier of the facts." In re TOUSA, Inc., 680 F.3d 1298, 1311 (11th Cir. 2012) (bracketing added); In re Chase & Sanborn Corp., 904 F.2d 588, 593 n.11 (11th Cir. 1990) (holding that case law applying the concept of "fair consideration" under the old Bankruptcy Act of 1898 has been adopted as applicable to the concept of "reasonably equivalent value" under the Bankruptcy Code of 1978). Some bankruptcy courts have stated that the "real test" for determining constructive fraud is whether the transfer resulted in an "unjust diminution of the debtor's estate." In re Waterford Wedgwood USA, Inc., 500 B.R. 371, 379 (Bankr. S.D.N.Y. 2013).

Here, during his time in Florida, Debtor received from his Father more money than he paid to the Father out of the Insurance Proceeds. The Father paid $9,710 to Debtor's landlord and gave $10,800 directly to Debtor during 2015. (Doc. 70 at 79-92). Therefore, it cannot be said that the transfer of the Insurance Proceeds resulted in a diminution of the bankruptcy estate. In essence, the Father held the insurance proceeds in trust for the benefit of the Debtor. Debtor ultimately received all such funds. Therefore, Debtor did not receive less than "reasonably equivalent value" for the Insurance Proceeds given to the Father. As a result, the Trustee's claim for constructive fraud, in Count 2, fails.

    *C.*    *Count 4 – Preferential transfer avoidance under 11 U.S.C. § 547(b).*

Section 547(b) of the Bankruptcy Code provides for avoidance of preferential transfers and states in pertinent part:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
> 
> (1) to or for the benefit of a creditor;
> 
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> 
> (3) made while the debtor was insolvent;

>> (4) made--
>
>> . . .
>
>>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
>> (5) that enables such creditor to receive more than such creditor would receive if-- (A) the case were a case under Chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (2016).

"The underlying purpose of preference law is the desire to insure an equal distribution of available assets to all creditors." Cohen v. McElroy (In re McElroy), 228 B.R. 791, 793 (Bankr. M.D. Fla. 1999). "In a preference case, the plaintiff has the burden of proving that the pre-petition transfer is avoidable . . . ." Id. "The burden of proof then shifts to the defendant [ ] to prove that it is entitled to one of the affirmative defenses [ ] set forth in section 547(c)." Id.

The Trustee contends McElroy is analogous to the instant facts. In McElroy, the debtor suffered personal injuries and lost his job in Maine. Id. at 792. As a result, the debtor moved in with his parents in Florida and pursued a personal-injury lawsuit to recover for his injuries. The McElroy court found that, during this time, the parents loaned the debtor money for living expenses, moving expenses, and vehicle payments. Id. Debtor signed a paper stating, "I promise to pay $50.00 a month to Ronald & Sandra McElroy [the parents] for money they loaned me for my Chevy truck. Total owed $3,800.00." Id. Debtor signed another paper stating, "I promise to pay $1400.00 for the VW Golf my parents purchased for me." Id. The parents explicitly admitted that "[i]t was agreed these advances would be repaid" and that the financial support was "made under an agreement between the parties, well prior to the bankruptcy of the debtor, wherein debtor would repay a portion of the debts so paid for him when he received an insurance settlement [in the personal-injury action] and/or returned to work." Id. (bracketing added). The debtor in

McElroy eventually settled the personal-injury lawsuit and paid $10,000.00 to his parents before filing bankruptcy. The court concluded that the transfer of the settlement proceeds constituted an avoidable preferential transfer under § 547(b).

Here, the Trustee points to the following testimony given near the end of the deposition:

> TRUSTEE: So if I understand you right, you're saying when [ ] the 2004 Ford Explorer was totaled and he got the insurance money, he gave you the insurance money, and then was part of that insurance money then to pay you back for the first month's rent and last month's rent and security deposit for the apartment, to help pay you back for some of the expenses that you had given him?
>
> FATHER: Yes.
>
> TRUSTEE: So at that point -- so if my math is right, in April of '15, you had given him $1,000, for the plane ticket, you gave him $500 spending cash, you put out $2,510 for the first month's rent and security deposit, you had given him $1,000 on March the 15th by check, you paid his rent for $800 in February of '15, then you gave him another $1,000 in April, and then you paid the rent on April the 1st for $800. So by my math that's about – about $7,600 that he was sort of into you for at the time that you got the insurance checks. Does that sound right?
>
> FATHER: Yes.
>
> TRUSTEE: Okay. So then you just took [ ] the $6,300 and then just sort of put it on his tab to sort of pay you back for the debt that he had -- for the money that you had given him?
>
> FATHER: Right. Yes.

(Doc. 70 at 126-27).

Prior to the above-quoted testimony, the Father testified as follows:

> TRUSTEE: And then the insurance company paid your son $7,309.37 for totaling out the vehicle. Do you recall that?
>
> FATHER: Yes, I do.
>
> TRUSTEE: And then in April of 2015, your son transferred $7,300 to you.
>
> FATHER: Yes.
>
> TRUSTEE: And that money was from the insurance proceeds from the vehicle?

7

> FATHER: Correct.
>
> TRUSTEE: Okay. Why did your son transfer the $7,300 back to you?
>
> FATHER: Because I held the money to him. Otherwise he would have spent; he would have nothing.
>
> TRUSTEE: So you're telling me the $7,300 was given to you to hold for him?
>
> FATHER: Yes. Actually, there was $6,300 released to me.

(Doc. 70 at 118-19). Unfortunately, neither attorney had the witness clarify the apparent conflict between the two above-quoted portions of testimony.

The Court is hesitant to give the Father's one-word answers to leading questions dispositive weight. Instead, the Court determines the Father's own words should carry the greater weight. That is, the Father testified he held onto the Insurance Proceeds so that Debtor would not spend the money. Such intent fits with the Father's prior and subsequent actions in helping his son. The Father gifted the Ford Explorer to Debtor, without expectation of repayment,[2] and continued to support Debtor after Debtor gave him the Insurance Proceeds. In 2015, the Father paid $9,710 to Debtor's landlord and gave an additional $10,800 directly to Debtor. The Father gave Debtor far more than Debtor gave to him and did so after taking possession of the Insurance Proceeds. The evidence shows the Father's intent was to help his son without any expectation of repayment.

Unlike in McElroy, there is no evidence that an agreement, obligation to repay, or a right to repayment existed. The Trustee's leading questions do not persuade the Court that the Father was either mistaken or dishonest when he testified that he took possession of the Insurance Proceeds to hold for Debtor's benefit. In sum, the Court does not find the existence of an "antecedent debt owed by the debtor before such transfer was made, " under § 547(b)(2), or that

---

[2] The Trustee's post-trial brief agrees that the Father "gifted the Debtor a 2004 Ford Explorer." (Doc. 72 at 1).

8

9

the transfer of Insurance Proceeds was made "to or for the benefit of a creditor," under § 547(b)(1). As a result, the Trustee's preference claim fails on the merits.

      The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.